UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONNECTICUT MUNICIPAL | : | |
| ELECTRIC ENERGY | : | |
| COOPERATIVE, | : | |
|   plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:19-cv-839(JCH) |
| | : | |
| NATIONAL UNION FIRE | : | |
| INSURANCE COMPANY OF | : | |
| PITTSBURGH, PA, | : | |
|   defendant. | : | |

RULING ON DEFENDANT'S MOTION TO COMPEL

Pending before the Court is the defendant's motion to compel. (Dkt. #35.)  The plaintiff filed a response in opposition to the motion on March 25, 2020. (Dkt. #41.) Plaintiff's response asserted that the defendant failed to meet and confer about the discovery dispute before filing the motion to compel. Since Rule 37 of the Local Rules of Civil Procedure requires the parties to meet and confer before filing a motion to compel, the Court held an on the record telephonic conference on April 21, 2020 and instructed the parties to meet and confer. Thereafter, on May 8, 2020, the parties submitted a joint status report detailing the remaining discovery issues.  (Dkt. #48.) Thereafter, oral argument was held on July 1, 2020.  For the reasons that follow, defendant's motion to compel is DENIED.

1

I.   **Background**

On May 31, 2019, plaintiff Connecticut Municipal Electric
Energy Cooperative ("CMEEC") brought suit against defendant
National Union Fire Insurance Company of Pittsburgh, PA
("National Union").  (Dkt. #1.)  National Union is a
Pennsylvania stock corporation that writes and issues insurance
policies in Connecticut.  (Dkt. #1, ¶4.)  National Union issued
a Not-For-Profit-Risk Protector insurance policy to CMEEC with
effective dates of coverage from November 1, 2015 until November
1, 2016 ("the Policy").  (Dkt. #1, ¶7.)

After National Union denied coverage under the policy,
CMEEC filed this action.  The amended complaint asserts claims
for breach of contract; breach of the covenant of good faith and
fair dealing; and seeks a declaratory judgement declaring that
National Union must indemnify or advance legal costs to CMEEC
under the Policy for legal fees, costs, and expenses incurred in
connection with certain civil and criminal proceedings.  (Dkt.
#32, ¶¶1-140.)

During discovery, National Union served interrogatories and
requests for production of documents on CMEEC.  On March 11,
2020, National Union wrote to the Honorable Janet C. Hall[1]
informing her of CMEEC's failure to respond to some of those

---

[1] National Union's motion to compel was referred to the undersigned on
March 30, 2020.  (Dkt. #44.)

discovery requests.  (Dkt. #35-1 at 1-2.)  National Union argues that CMEEC failed to properly object to the discovery requests and asks the Court to compel CMEEC to respond.  (Dkt. #35-1 at 1-2.)  The Court held a telephonic discovery conference and instructed the parties to meet and confer.  Thereafter, the parties were able to resolve their disputes over all but the following discovery requests:

A. *National Union's Discovery Requests for CMEEC*

**Interrogatory No. 14:** For each and every person identified in response to Interrogatory No. 13, identify each person's familial relationship with any current or former CMEEC employee, including Rankin, Sullivan, Bilda, DeMuzzio, and/or Pryor.

**Request No. 5:** Any and all documents concerning communications between Drew Rankin ("Rankin"), James Sullivan ("Sullivan"), John Bilda ("Bilda"), Edward DeMuzzio ("Demuzzio"), Edward Pryor ("Pryor") and CMEEC concerning Indictment 1 or Indictment 2.

**Request No. 8:** Any and all documents concerning communications between CMEEC and any person or entity concerning the Pryor Lawsuit, including, but not limited to, one or more attorneys at Finn Dixon & Herling LLP.

**Request No. 32:** Any and all documents concerning communications between Rankin, Sullivan, Bilda, Demuzzio, or Pryor and any police force or government entity or organization, regarding the allegations in Indictment 1 or Indictment 2.

**Request No. 33:** Any and all documents evidencing costs or expenses that CMEEC paid or reimbursed as alleged in Indictment 1.

**Request No. 34:** Any and all documents evidencing costs or expenses that CMEEC paid or reimbursed relating to trips to the Kentucky Derby or the golf resort in West Virginia.

**Request No. 35:** Any and all documents concerning the trips to the Kentucky Derby or the golf resort in West Virginia referenced in Indictment 1 or Indictment 2.

**Request No. 36:** Any and all documents concerning the alleged personal expenses that CMEEC paid or reimbursed on behalf of Mr. John Bilda, as alleged in Indictment 2.

**Request No. 37:** Any and all documents concerning CMEEC's termination of the employment of Drew Rankin.

**Request No. 38:** Any and all documents concerning CMEEC's indemnification or payment of legal fees relating to Indictment 1.

**Request No. 39:** Any and all documents concerning CMEEC's indemnification or payment of legal fees relating to Indictment 2.

**Request No. 40:** Any and all documents concerning CMEEC's indemnification or payment of legal fees relating to the Pryor Lawsuit.

**Request No. 45:** Any and all documents produced by CMEEC in response to the Subpoenas.

**Request No. 53:** Any and all documents evidencing meetings, agendas, itineraries, or conferences that occurred at the trips to the Kentucky Derby or the golf resort in West Virginia as alleged in Indictment 1 or Indictment 2.

**Request No. 54:** Any and all documents concerning communications by Rankin, Sullivan, Bilda, Demuzzio, or Pryor to any person or entity concerning the Pryor Lawsuit.

**Request No. 55:** Any and all documents concerning the payment of any travel expenses, private chartered airfare, first-class hotel accommodations, meals, tickets to sporting events, golf fees, souvenirs and gifts as alleged in paragraphs 19 and 20 of Indictment 2.

**Request No. 56:** Any and all documents concerning gifts paid for, or reimbursed by, CMEEC during trips to the Kentucky Derby or the golf resort in West Virginia as alleged in Indictment 1 or Indictment 2.

4

**Request No. 59:** Any and all correspondence between CMEEC and QE.LLC.

**Request No. 60:** Any and all correspondence between Rankin, Sullivan, Bilda, Demuzzio, or Pryor and QE.LLC. *See* Indictment 2, ¶¶ 27, 36, 54.

**Request No. 61:** Any and all documents concerning the alleged personal expenses that CMEEC paid or reimbursed on behalf of Mr. James Sullivan, as alleged in Indictment 1 or Indictment 2.

**Request No. 71:** Any and all correspondence between CMEEC and any agent, representative, or employee of the City of Norwich, the City of Groton, the Borough of Jewett City, the Second Taxing District of the City of Norwalk, the Third Taxing District of the City of Norwalk, and the Town of Bozrah, Connecticut, concerning trips to the Kentucky Derby or the golf resort in West Virginia.

**Request No. 72:** Any and all correspondence between Rankin, Sullivan, Bilda, Demuzzio, or Pryor and any agent, representative, or employee of the City of Norwich, the City of Groton, the Borough of Jewett City, the Second Taxing District of the City of Norwalk, the Third Taxing District of the City of Norwalk, and the Town of Bozrah, Connecticut, concerning trips to the Kentucky Derby or the golf resort in West Virginia.

**Request No. 73:** Any and all documents concerning internal investigations by CMEEC, or on behalf of CMEEC, concerning the allegations in Indictment 1 or Indictment 2, including, but not limited to, any investigations by Suisman Shapiro.

**Request No. 75:** Any and all documents that CMEEC created or produced in response to Freedom of Information Act Requests it received from 2013 through the present that concern the allegations in Indictment 1, Indictment 2, or the Pryor Action.

    B. *CMEEC's Responses to the Discovery Requests*

Except for request numbers 8, 38, 39, 40, 45 and 59, CMEEC

provided the same response to all of National Union's production

requests.  The only variation is that CMEEC asserted that

certain requests are vague and overly broad.

**RESPONSE:** Plaintiff objects to this request as vague and overly
broad in that it contains numerous undefined terms regarding
"[a]ny and all communications between CMEEC and any person or
entity concerning the Pryor Lawsuit." Plaintiff further objects
on the grounds that this request is overly broad and not
proportional to the needs of the case and it seeks documents
that are not relevant to the claims or defenses in this case.
Plaintiff further objects to this request as seeking information
protected by the work product doctrine and the attorney-client
privilege.

(Dkt. #35-1, at 12); (Dkt. #35-2, at 9, 18-20, 22, 25-27, 30-
32.)

      The following responses included the general objection

quoted above plus an additional response.

**Response to Production Request No. 8:** Subject to and without
waiving its objections, Plaintiff states that following a
due and reasonable search, it has not located responsive
documents.

**Response to Production Request No. 35:** Subject to and without
waiving its objections, Plaintiff will produce responsive
non-objectionable documents. Plaintiff refers to documents
produced as CMEEC 00001 to 00306, 00628-1559 and documents
referenced in response to request no. 68.

**Response to Production Request No. 39:** Subject to and without
waiving its objections, Plaintiff will produce responsive
non-objectionable documents. Plaintiff refers to documents
produced as 00001 to 00306, 00628-1559 and documents referenced
in response to request no. 68.

**Response to Production Request No. 40:** Subject to and without
waiving its objections, Plaintiff will produce responsive
non-objectionable documents. Plaintiff refers to documents
produced as 00001 to 00306, 00628-1559, 1568 to 1655 and
documents referenced in response to request no. 68.

(Dkt. #35-2, at 10, 19-20.)

CMEEC responded to National Union's requests for production numbers 45 and 59 with the following responses:

**Response to Production Request No. 45:** Plaintiff objects to this request on the grounds that this request is overly broad and not proportional to the needs of the case and it seeks documents that are not relevant to the claims or defenses in this case. Plaintiff further objects to this request as seeking information protected by the work product doctrine and the attorney-client privilege.

**Response to Production Request No. 59:** Plaintiff objects on the grounds that this request is overly broad and not proportional to the needs of the case and it seeks documents that are not relevant to the claims or defenses in this case.

(Dkt. #35-2, at 22, 25.)

On February 11, 2020, plaintiff supplemented its responses to requests for production numbers 38, 39, and 40.

**Supplemental Response to Production Request No. 38, 39, and 40:** Objection pending. Subject to and without waiving its objections, in addition to documents previously produced, the plaintiff refers to documents produced with these supplemental responses as CMEEC 01774-01856.

(Dkt. #48-1, at 1-6.)

## II.  <u>Legal Standard</u>

"Where a party 'fails to produce documents . . . as requested,' Federal Rule of Civil Procedure 37 permits '[the] party seeking discovery . . . [to] move for an order compelling an answer, designation, production or inspection.'"  <u>In re Aggrenox Antitrust Litig.</u>, No. 3:14-CV-572 (SRU), 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017) (quoting Fed. R. Civ. P. 37(a)(3)(B)) (alterations in original).  "Because the Federal Rules . . . are to be construed liberally in favor of discovery,

7

. . . the party resisting discovery bears the burden of showing why discovery should be denied." In re Aggrenox Antitrust Litig., 2017 WL 5885664, at *1 (internal citations and quotation marks omitted).

"All '[m]otions relative to discovery,' including motions to compel, 'are addressed to the discretion of the [district] court.'" Id. (quoting Soobzokov v. CBS, Quadrangle/New York Times Book Co., 642 F.2d 28, 30 (2d Cir. 1981)). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." Crawford-El v. Britton, 523 U.S. 574, 598 (1998). Discovery orders "will only be reversed if [the district court's] decision constitutes an abuse of discretion." Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991).

### III.   Discussion

Rule 26 of the Federal Rules of Civil Procedure allows parties to obtain "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Id. "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. "Relevance to the subject matter under Rule 26

is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" United States CFTC v. Parnon Energy, Inc., 593 Fed. Appx. 32, 36 (2d Cir. 2014) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).

CMEEC's response to the motion to compel asserts that the requested discovery is not relevant to whether National Union properly denied coverage of CMEEC's claim and therefore not relevant to a claim or defense in this action. (Dkt. #41, 5–13.) As a result, CMEEC argues that the requested information and documents are not discoverable. The Court concludes that the documents are relevant but finds that their production is not proportional to the needs of the case.

*A. The Discovery Requests Are Relevant to National Union's Defense for Discovery Purposes.*

CMEEC's lawsuit is based on National Union's failure to indemnify and advance legal costs to CMEEC for federal grand jury subpoenas served on CMEEC in October of 2016 and March of 2017. (Dkt. #32, ¶¶14, 16, 22–25.) CMEEC also challenges, *inter alia*, National Union's failure to indemnify and advance legal costs for two federal indictments brought against certain

agents and representatives of CMEEC's Board of Directors and certain officers of CMEEC.[2] (Dkt. #32, ¶¶40, 43.)

National Union claims that it was not required to indemnify CMEEC or advance legal costs under the Policy because of an exclusion in the Policy.[3] (Dkt. #35-1, at 13.) National Union asserts that the requested discovery is relevant to a claim or defense in the case because the requested information will show that the exclusion applied and, therefore, National Union did not wrongfully deny coverage. (Dkt. #35-1, at 13-14.)

Illustrating the point, one of the indictments alleges that the indicted individuals conspired to conduct the business and affairs of CMEEC for their personal and financial benefit "and

---

[2] The individuals are Drew Rankin, James Sullivan, John Bilda, Edward DeMuzzio and Edward Pryor. (Dkt. #32, ¶¶40, 43.)

[3] "The exclusion in Endorsement # 8 states:
In consideration of the premium charged, it is hereby understood and agreed that, with respect to all Coverage Sections, the Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured alleging, arising out of, based upon, or attributable to:
(i) payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time domestic or foreign government or armed services officials, agents, representatives, employees *or any members of their family* or any entity with which they are affiliated; or
(ii) payments, commissions, gratuities, benefits or any other favors to or for the benefit of any full or part-time officials, directors, agents, partners, representatives, principal shareholders, or owners or employees, or "affiliates" (as that term is defined in The Securities Exchange Act of 1934, including any officers, directors, agents, owners, partners, representatives, principal shareholders or employees of such affiliates) of any customers of the Organization or *any members of their family* or any entity with which they are affiliated; . . . ." (Dkt. #35-1, at 13)(emphasis in original).

for the personal pecuniary and financial benefit of their family members, friends and associates." (Dkt. #35-1, at 13)(quoting Dkt. #35-6, at ¶17).  Among other things, the indictment alleges that a trip to the Kentucky Derby in 2015 included James Sullivan's brother, sister-in-law and minor son. (Dkt. #35-1, at 13)(citing Dkt. #35-6, at ¶31). National Union asserts that the allegations in the indictments potentially trigger the exclusion in coverage, thereby making the identities of individuals who attended certain trips relevant and discoverable. (Dkt. #35-1, at 13-14).

    CMEEC notes that the case law in Connecticut provides that when evaluating whether an insurer has a duty to defend its insured, "it is the claim which determines the insurer's duty to defend; and it is irrelevant that the insurer may get information from the insured, or from anyone else, which indicates, or even demonstrates, that the [claim] is not in fact covered." (Dkt. #41, at 8)(quoting Hartford Casualty Insur. Co. v. Litchfield Mutual Fire Insur. Co., 274 Conn. 457, 464 (2005)).  Thus, CMEEC argues that National Union cannot use the requested information or documents to establish that the exclusion in the Policy applied.  Instead, CMEEC argues that, when determining whether the Policy required coverage, National Union is limited to the allegations in the complaint and in the indictments.  (Dkt. #41, at 5-9.)  Thus, CMEEC argues that the

11

interrogatories and requests for production seek irrelevant and non-discoverable information.  (Dkt. #41, at 5-9.)  The Court disagrees.

While the requested information may not be relevant at trial, relevancy is much broader for discovery purposes.  See Oppenheimer Fund v. Sanders, 437 U.S. 340, 351-352 (1978).  Rule 26(b)(1) of the Federal Rules of Civil Procedure provides, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  CMEEC's argument would essentially foreclose almost all discovery in insurance cases involving an alleged breach of the duty to defend or to advance legal costs.  Therefore, the Court rejects CMEEC's argument.

   B. The Discovery Requests Are Not Proportional to the Needs
      of the Case

CMEEC argues that National Union's discovery requests are not proportional to the needs of the case.  When determining whether discovery is "proportional to the needs of the case," Rule 26(b)(1) of the Federal Rules of Civil Procedure requires a court to consider the following factors, "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the

issues, and whether the burden or expense of the proposed
discovery outweighs its likely benefit."  Id.

The proportionality analysis focuses on the marginal
utility of the requested discovery. Osucha v. Alden state Bank,
2019 WL 6783289 (WDNY 2019).  Generally, the greater the
relevance of the requested information, the less likely the
requested discovery will be disproportionate to the needs of the
case.  Vaiggasi v. Solow Mgmt. Corp., 11 Civ. 5088 (RMB)(HBP),
2016 WL 616386 (SDNY Feb. 16, 2016).

The party resisting the discovery, in this instance CMEEC,
bears the burden of showing that the requested discovery is
disproportionate to the needs of the case. United States ex rel.
Rubar v. Hayner Hoyt Corp., No. 514CV830GLSCFH, 2018 WL 4473358,
at *10 (N.D.N.Y. Sept. 18, 2018); see also Royal Park
Investments SA/NV v. Deutsche Bank Nat'l Trust Co., 14-cv-4394
(AJN) (BCM), 2016 WL 4613390, at *6-7 (S.D.N.Y. Aug. 31,
2016)("the party resisting discovery bears the burden of
demonstrating that ... the requests are irrelevant, or are
overly broad, burdensome, or oppressive.").  As the advisory
committee notes make clear, the 2015 "amendments were intended
to 'encourage judges to be more aggressive in identifying and
discouraging discovery overuse.'" Alaska Elec. Pension Fund v.
Bank of Am. Corp., No. 14-CV-7126 (JMF), 2016 WL 6779901, at *2

(S.D.N.Y. Nov. 16, 2016)(quoting Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015 amendments).

National Union argues that the discovery is proportional to the needs of the case because the probative value of the discovery outweighs the burden of production.  In response, CMEEC states that the requested information includes over a million documents that do not bear on the issues disputed in this case and that production of the requested discovery would be prohibitively expensive.  Upon consideration of the five factors below, the Court agrees with CMEEC.

1. <u>The importance of the issues at stake in the action</u>

The issues in this case are certainly important to the parties.  The dispute centers around whether National Union is required to reimburse CMEEC for certain expenses and fees incurred as part of the criminal investigations and the Pryor Civil Action.  The lawsuit will determine which party will be responsible for significant legal fees and costs.

2. <u>The amount in controversy</u>

The amount in controversary is very high.  The parties stated at oral argument that the damages sought for the cost of defense in the previous actions is about $4,000,000 and is continuing to increase.

14

3. The parties Relative Access to Relevant
   Information

As it relates to the disputed discovery requests, CMEEC has greater access to the information than National Union.  However, as discussed below, the Court finds the requested discovery has minimal relevance and, given the burden and expense of production, is disproportionate to the needs of the case.

4. The importance of the discovery in resolving
   the issues

National Union argues that the discovery is relevant to whether the exclusion in Endorsement #8 applies.  (Dkt. #35-1, at 13.)  Specifically, National Union asserts that the documents will demonstrate whether the individuals in attendance at the Kentucky Derby or the golf resort in West Virginia were related to the individuals charged in the indictment.  Thus, National Union argues that the requested information will shed light on whether the exclusion applies.  As noted earlier, the exclusion provides, in part, that "the Insured shall not be liable to make any payment for Loss in connection with any Claim made against any Insured alleging, arising out of, based upon, or attributable to payments, commissions, gratuities, benefits or other favors to or for the benefit of . . . employees *or any members of their family*." (Dkt. #35-1, at 13.)(emphasis in original).

In response, CMEEC argues that the documents are not important to the resolution of the issues in the case.  Rather, the requested documents relate to issues that will be involved in the pending criminal trial.[4]  (Dkt. #48, at 9.)

As noted earlier, as a legal matter, CMEEC argues that any information that National Union discovered outside of the claim is entirely irrelevant at trial to whether National Union wrongfully denied coverage.[5]  (Dkt. #41, at 10.)

As CMEEC notes, "[i]n construing the duty to defend as expressed in an insurance policy, [t]he obligation of the insurer to defend does not depend on whether the injured party will successfully maintain a cause of action against the insured but on whether he has, in his complaint, stated facts which bring the injury within the coverage."  Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 274 Conn. 457, 463-64 (2005) quoting Bd. of Educ. of City of Bridgeport v. St. Paul Fire & Marine Ins. Co., 261 Conn. 37, 40-41 (2002))(internal quotation marks omitted).  "If the latter situation prevails, the policy requires the insurer to defend, irrespective of the insured's ultimate liability. . . . It necessarily follows that the

---

[4] As noted during the oral argument, CMEEC is not a party to the criminal proceedings.
[5] National Union merely cites to the breadth of discovery allowed under the federal rules as support that the discovery requests would be relevant.  (Dkt. No. 48, at 7.)

insurer's duty to defend is measured by the allegations of the

complaint. . . .  Hence, if the complaint sets forth a cause of

action within the coverage of the policy, the insurer must

defend." Board of Education, 261 Conn. at 40-41 (internal

quotation marks omitted). "If an allegation of the complaint

falls even possibly within the coverage, then the insurance

company must defend the insured." Moore v. Continental Casualty

Co., 252 Conn. 405, 409 (2000) (internal quotation marks

omitted).

> Connecticut courts have consistently held
>
> that the duty to defend means that the insurer will defend
> the suit, if the injured party states a claim, which, qua
> claim, is for an injury covered by the policy; it is the
> claim which determines the insurer's duty to defend; and ***it
> is irrelevant that the insurer may get information from the
> insured, or from any one else, which indicates, or even
> demonstrates, that the injury is not in fact covered***.

Hartford Cas. Ins. Co., 274 Conn. at 464 (emphasis added)

(quoting Keithan v. Massachusetts Bonding & Ins. Co., 159 Conn.

128, 139 (1970))(internal quotation marks omitted).

As CMEEC notes, the Connecticut Supreme Court has

consistently held that coverage under an insurance policy is

determined solely based on the claim and any outside information

is irrelevant.  Hartford Cas. Ins. Co., 274 Conn. at 464;

Keithan, 159 Conn. at 139; Flint v. Universal Mach. Co., 238

Conn. 637, 647 (1996); Qsp, Inc. v. Aetna Cas. & Sur. Co., 256

Conn. 343, 352 (2001).

Exclusions encompassed in an insurance contract are considered similarly to other policy provisions and the language is viewed favorably to the insured.  Nationwide Mut. Ins. Co. v. Pasiak, 327 Conn. 225, 239 (2017).  "When construing exclusion clauses, 'the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim.'"  Id. (quoting Connecticut Ins. Guaranty Assn. v. Drown, 314 Conn. 161, 188 (2014)).  "While the insured bears the burden of proving coverage, the insurer bears the burden of proving that an exclusion to coverage applies."  Nationwide Mut. Ins. Co., 327 Conn. at 239 (citing Capstone Building Corp. v. American Motorists Ins. Co., 308 Conn. 760, 788 n.24 (2013).

"When an exclusion clause is relied upon to deny coverage, the insurer has the burden of demonstrating that the allegations of the [underlying] complaint cast that pleading solely and entirely within the policy exclusions and, further, that the allegations, in toto, are subject to no other interpretation." Nationwide Mutual Ins. Co. v. McHugh, No. 448929, 2001 WL 1706752 at *3 (Conn. Super. Dec. 19, 2001) (citation omitted). An insurer's obligation to defend under a policy provision is not terminated where facts and circumstances arise throughout litigation demonstrating that an exclusion to coverage applied. Vermont Mut. Ins. Co. v. Ciccone, 900 F. Supp. 2d 249, 261 (D.

18

Conn. 2012).  The obligation to defend and continue to defend the insured is determined based on whether the complaint establishes a possibility that the claim is covered under the insurance policy.  Id.

As a factual matter, CMEEC further asserts that the identities of the individuals who attended the conferences and the amounts that were paid are not in dispute in the present action. (Dkt. #48, at 9.)  CMEEC asserts that documents addressing those issues have already been produced to National Union. (Id.)  According to CMEEC, CMEEC has already produced "documents concerning the Kentucky Derby trips and golf trips which are the subject of the criminal indictments, as well as trips which are not, including: (1) lists identifying the attendees on each of the trips; (2) emails from Drew Rankin to the invited guests."  (Id.)  Thus, National Union's need for the requested discovery appears minimal, at best.

   5. Whether the burden or expense of the proposed
        discovery outweighs its likely benefit

Most of the documents that National Union has requested are included within Request for Production No. 45, which seeks the production of "any and all documents produced by CMEEC in response to the subpoenas."[6]  (Dkt. #48, at 5.)  National Union

---

[6] National Union concedes that the information requested in Request No. 45 largely duplicates the information requested in Request Nos. 5, 9, 19, 20, 31-36, 53-61, 64-67, and 71-76. (Dkt. #48, at 5).

notes that those documents were already prepared and examined in response to the grand jury subpoenas. (Id.) Thus, National Union argues that CMEEC's burden in producing the requested documents is relatively low because by "producing the subpoena compliance, [CMEEC] would wholly or partially satisfy . . . Requests 5, 9, 19, 20, 31-36, 53-61, 64-67, and 71-76." (Dkt. No. 48, at 5-6.) According to National Union, "[t]he documents responsive to Production Request 45 should be readily available for [CMEEC] to produce, as [CMEEC] has already produced them to the federal government. In doing so, presumably [CMEEC] screened the documents for privilege and reviewed them for responsiveness." (Dkt. No. 48, at 5.)[7]

According to CMEEC, CMEEC has already produced over 4,000 pages of documents in response to National Union's discovery requests. (Dkt. #48, at 1.) CMEEC argues that the discovery requests include more than one million additional documents that do not bear on the issues disputed in this case and the production of such documents would be prohibitively expensive.

Additionally, in response to National Union's argument that producing the same documents that were produced in response to

---

[7] National Union makes a similar argument regarding Request for Production No. 75, which seeks the production of "[a]ny and all documents that CMEEC created or produced in response to Freedom of Information Act Requests it received from 2013 through the present that concern the allegations in Indictment 1, Indictment 2, or the Pryor Action." (See Dkt. #48, at 6).

the subpoenas in the criminal proceedings should require minimal effort or expense, CMEEC advised the Court, during the oral argument on July 1, 2020, that CMEEC retained a different lawyer for the criminal proceedings.  Thus, CMEEC's civil lawyer is not familiar with the documents that were produced in the criminal proceedings.  In order to produce those documents in this case, CMEEC's current counsel would need to duplicate the work done by the lawyer in the criminal proceedings.  Notably, CMEEC asserts that National Union's production requests would encompass over a million documents and the cost would be prohibitively expensive as CMEEC has already incurred over $4,000,000 litigating the criminal and civil actions for which National Union has denied coverage.  CMEEC argues that this would be overly burdensome as CMEEC is a not-for-profit organization and a political sub-division created by statute.  The Court finds that CMEEC has met its burden of proving that the cost and burden of production would be significant and disproportionate to the needs of the case.

The 2015 advisory committee notes to Rule 26 of the Federal Rules of Civil Procedure specifically acknowledge that the proportionality analysis will sometimes preclude a party from obtaining information that would otherwise be discoverable.  As the advisory committee notes state, "[t]he objective is to guard against redundant or disproportionate discovery that may be

directed to matters that are otherwise proper subjects of inquiry." Fed. R. Civ. P. 26(b)(1), advisory committee notes to 2015 amendments.

There may very well be relevant information in the documents that were produced in response to the subpoenas in the criminal proceedings. However, it is difficult to see how every single document that was produced in response to those subpoenas would be relevant to the limited issues in the instant case.

The critical issue in this case involves "the application of the exclusion contained in Endorsement 8 of the policy." (Dkt. #48, at 7). Given the language of the exclusion, which is quoted in footnote 3 of this Decision, the identities of the individuals who attended the conferences and the amounts paid are highly relevant to whether the exclusion applies. However, CMEEC asserts that this information is not in dispute and documents addressing those issues have already been produced to National Union.[8] (Dkt. #48, at 9.) Those documents include:

---

[8] Before the Court instructed the parties to meet and confer, Request for Production No. 76 was one of the disputed items. Request No. 76 requested "[a]ny and all documents concerning the identifies of individuals who attended the trips to the Kentucky Derby or the golf resort in West Virginia referenced in" the Indictments. Apparently, the dispute over Request No. 45 has been resolved. While the Court struggled with whether to compel CMEEC to answer Interrogatory No. 14, the Court declined to do so, based on the fact that the parties have successfully resolved their dispute over Request No. 76. Unlike Interrogatory No. 14, which incorporates Interrogatory No. 13, Request No. 76 is more narrowly tailored. Interrogatories 13 and 14 appear to seek information that is not even covered by the criminal proceedings.

> (i)     a report of Attorney Eileen Duggan to the
>         Special Committee of the Board of Directors of
>         CMEEC, which consists of more than 800 pages
>         including exhibits consisting of emails and
>         documents concerning the facts alleged in the
>         criminal proceedings;
>
> (ii)    documents concerning the termination of Mr.
>         Rankin's employment, including minutes from
>         board meetings;
>
> (iii)   documents evidencing the payment of costs to
>         the Kentucky Derby and golf resorts;
>
> (iv)    documents concerning expense reimbursements to
>         Messrs. Bilda and Sullivan; and
>
> (v)     legal invoices CMEEC has paid relating to the
>         defense of the individual defendants in the
>         criminal proceedings.[9]

(Dkt. #48, at 8-10).  Such documents appear to go to the very heart of the issues presented in this litigation.  Thus, it is unclear why, after receiving that information, National Union is still in need of such expansive discovery.

The parties in this case are litigating the coverage dispute, not the criminal cases or the Pryor Civil Action. Given the narrow issues in this case and the vast amount of discovery that has already been produced by CMEEC, the marginal utility of requiring CMEEC to produce "any and all" documents it produced in response to the criminal subpoenas does not justify

---

[9] Although Request for Production Nos. 34-39 are overly broad, the documents that CMEEC has produced are partially responsive to those requests.

23

the tremendous expense.[10] See *e.g.*, <u>Alaska Elec. Pension Fund v.</u>
<u>Bank of Am. Corp.</u>, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *3
(S.D.N.Y. Nov. 16, 2016)("At bottom, then, Plaintiffs' entire
relevancy argument hinges on a general contention that every
communication and work product related to the regulatory
investigations is 'likely' to contain additional relevant
information. But that sort of conclusory claim is insufficient
to support such an expansive discovery request."); <u>Badr v.</u>
<u>Liberty Mutual Grp.</u>*, Inc.*, No. 06-CV-1208, 2007 WL 2904210
(AHN), at *3 (D. Conn. Sept. 28, 2007) (finding a request for
"any and all" documents "overly broad").[11]

---

[10] Request No. 75 seeks "any and all documents that CMEEC created or
produced in response to [FOIA] requests it received from 2013 through
the present that concern the allegations in" the Indictments or the
Pryor Action.  The issues in this case are much narrower than the
issues in the criminal proceedings.  The main question in this case is
whether the exclusion applies.  Thus, the marginal utility of *anything*
*and everything* that CMEEC *created or produced* in response to FOIA
requests from 2013 to the present seems minimal.

[11] Many of the discovery requests broadly seek "any and all" documents
related to certain topics.  For instance, Request for Production No. 5
seeks *any and all documents* concerning communications between any of
the indicted individuals and CMEEC regarding the Indictments; Request
No. 8 seeks *any and all documents* concerning communications between
CMEEC and *any person or entity* concerning the Pryor Civil lawsuit;
Request No. 32 seeks *any and all documents* concerning *communications*
between the indicted individuals and any police force or government
entity or organization, regarding the allegations in the Indictments;
Request No. 53 requests *any and all documents* evidencing meetings,
agendas, or itineraries at the trips to the Kentucky Derby or the golf
resort in West Virginia.  Given the language in the exclusion clause,
these incredibly broad requests are disproportionate to the needs of
the case.

Although the amount in controversy is admittedly very
high, the Court concludes, based on the above discussion, that
the potential benefit of the disputed discovery does not justify
the burden and expense of production.  As discussed above, many
of the issues that the requested documents are designed to
resolve are not actually in dispute in the present action, due
to concessions that have been made or documents that have been
produced already.  Further, the burden that would be created by
having the lawyer who represents CMEEC in this action review and
duplicate the documents that were reviewed and produced by a
different lawyer in the criminal proceedings would be
prohibitively expensive.

Thus, applying the proportionality factors, the Court
concludes that the documents requested are not proportional to
the needs of the case.  The Court must therefore deny National
Union's motion to compel.

## IV.  <u>Conclusion</u>

For the above reasons, the defendant National Union's
motion to compel is DENIED.

This is not a Recommended Ruling.  This is a discovery
ruling or order which is reviewable pursuant to the "clearly
erroneous" statutory standard of review.  28 U.S.C. §
636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. R. 72.2.

As such, it is an order of the Court unless reversed or modified by a district judge upon motion timely made.

SO ORDERED this 15th day of October, 2020 at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge