UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CONNECTICUT MUNICIPAL ELECTRIC ENERGY COOPERATIVE,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br><br>*Defendant*. | Civil No. 3:19cv839 (JBA)<br><br><br>October 29, 2021 |

**RULING ON PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION**

On September 14, 2021, this Court granted in part and denied in part Connecticut Municipal Electric Energy Cooperative's ("CMEEC") Motion for Summary Judgment. In so doing, the Court held that the Policy's Commission Exclusion did not preclude CMEEC's claims but denied CMEEC's request for summary judgment on Counts Two, Four, Five, and Six, stating that "CMEEC must now demonstrate at trial that its Claims are covered under the Policy."[1] (Ruling on Mots. for Summ. J. and Mots. to Preclude Expert Testimony ("Ruling") [Doc. # 148] at 27.) CMEEC now seeks reconsideration of the Court's ruling as to these counts, asserting that the Court, in "clear error," overlooked "controlling decisions and data" that compelled summary judgment in CMEEC's favor because it already demonstrated that its claims are covered under its Policy. (Pl.'s Mem. of Law Supporting Mot. for Reconsideration of Portions of Ruling on Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mem.") [Doc. # 150] at 1.) National Union Fire Insurance Company of Pittsburgh, PA

---

[1] The Court also denied CMEEC's request for summary judgment as to Count One but CMEEC is not asking for reconsideration of this holding. (Pl.'s Mem. at 13 n.9.)

1

("National Union") opposes, arguing that CMEEC does not reference any "change in controlling law, new evidence, clear error, or manifest injustice." (Def.'s Opp'n to Pl.'s Mot. for Reconsideration ("Def.'s Opp'n") [Doc. # 153] at 1.) For the reasons that follow, CMEEC's motion is GRANTED.

## I. Background

The Court assumes the parties' familiarity with the facts of this case but will briefly review CMEEC's claims, the Court's ruling, and the relevant policy provisions.

### A. CMEEC's Claims

Count Two asserts a breach of contract claim against National Union for failing to indemnify CMEEC for the legal fees and costs resulting from two grand jury indictments of its directors and officers. (Am. Compl. [Doc. # 32] ¶¶ 40-48.) Count Four seeks a declaratory judgment for the future advancement of legal fees that result from the same grand jury indictments. (*Id.* ¶¶ 102-09.) In Count Five, CMEEC alleges that National Union breached its contract when it failed to advance legal fees to CMEEC for the organization's defense of the civil action, *Pryor v. Connecticut Municipal Electric Energy Cooperative*, Doc. No. 3:19cv00087 ("Pryor civil action"). (*Id.* ¶¶ 115-20.) CMEEC's sixth count seeks a declaratory judgment for the future advancement of legal fees resulting from the Pryor civil action. (*Id.* ¶¶ 139-40.)

### B. The Court's Ruling

In ruling on the parties' cross-motions for summary judgment, the Court held that National Union could not resort to the Commissions Exclusion to deny CMEEC's claims. (Ruling at 26-27.) The Court did not grant summary judgment in CMEEC's favor, however, because it concluded that CMEEC had to demonstrate that the fees it incurred from the indictments and the Pryor civil action were covered under the parties' Policy. (*Id.*) In this decision, the Court overlooked CMEEC's evidence that its claims were covered claims.

### C. Relevant Policy Provisions

The parties' policy includes a section entitled "Directors, Officers And Not-For-Profit Organization Liability Coverage Section One," abbreviated as the "D&O Coverage Section." (Ex. A, ("Policy") [Doc. # 61-2] at 29.)  The D&O Coverage Section has two relevant subsections—Coverage B and Coverage C. The "Coverage B: Organization Indemnification Reimbursement Insurance" subsection of the D&O Coverage Section states:

> This policy shall pay on behalf the **Organization**[2] **Loss** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act** of such **Individual Insured**, but only when and to the extent that the **Organization** has indemnified such **Individual Insured** for such **Loss** pursuant to law, common or statutory, or contract, or the Charter or By-laws of the **Organization**, duly effective under such law which determines and defines such rights of indemnity. The **Insurer** shall, in accordance with and subject to Clause 5 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

(*Id.*)

The "Coverage C: Organization Entity Coverage" subsection of the D&O Coverage Section states:

> This policy shall pay on behalf of the **Organization Loss** arising from a **Claim** first made against the **Organization** during the **Policy Period** or the **Discovery Period** (if applicable) and reported to the **Insurer** pursuant to the terms of this policy for any actual or alleged **Wrongful Act** of the **Organization**. The **Insurer** shall, in accordance with and subject to Clause 5 of this **Coverage Section**, advance **Defense Costs** of such **Claim** prior to its final disposition.

(*Id.*)

The Policy defines a "**Claim**" as:

> (1) a written demand for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations); or
>
> (2) a civil, criminal, regulatory or administrative proceeding for monetary, non-monetary or injunctive relief which is commenced by:

---

[2] The Policy uses bold font for defined terms.

3

>> (i) service of a complaint or similar pleading;
>
> (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or
>
> (iii) receipt or filing of a notice of charges.

(*Id.* at 30.)

The Policy includes several definitions for the term "**Wrongful Act**," including

> (1) with respect to **Individual Insureds**, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such **Insureds** in his/her respective capacities as such, or any matter claimed against such **Individual Insured** solely by reason of his/her status as an **Individual Insured** of the **Organization**;
>
> (2) with respect to the **Organization** under Coverage C [Organization Entity Coverage], any breach of duty, neglect, error, misstatement, misleading statement, omission or act by or on behalf of the Organization.

(*Id.* at 3.)

A "**Loss**" under the policy includes "**Defense Costs**," defined as "reasonable and necessary fees, costs and expenses consented to by the Insurer." (Policy at 12, 30.) Further, the insurer is only liable for "**Loss** arising from a **Claim** which is in excess of the applicable Retention amount" and the Policy asserts that "single Retention amount shall apply to **Loss** arising from all Claims alleging the same **Wrongful Act** or **Related Wrongful Acts**." (*Id.* at 17.)

The advancement of **Defense Costs** is set out in Clause 5, which was replaced by Endorsement 11, and provides:

> The **Insurer** does not assume any duty to defend. The **Insureds** shall defend and contest any claim against them.
>
> Notwithstanding the foregoing, the **Insureds** shall have the right to tender the defense of the **Claim** to the **Insurer**, which right shall be exercised in writing by the **Named Organization** on behalf of all **Insureds** to the **Insurer** pursuant to the notice provisions of Clause 7 of the General Terms and Conditions. . . .

4

>   When the **Insurer** has not assumed the defense of a **Claim** pursuant to this Clause 5, the **Insurer** nevertheless shall advance, at the written request of the **Insured**, **Defense Costs** prior to the final disposition of a **Claim**. Such advanced payments by the **Insurer** shall be repaid to the **Insurer** by each and every **Insured** or the **Organization**, severally according to their respective interests, in the event and to the extent that any such **Insured** or the **Organization** shall not be entitled under the terms and conditions of this D&O Coverage Section to payment of such **Loss**. . . .
>
>   [T]he **Insured** shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. . . . Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this D&O Coverage Section. The **Insurer** shall not unreasonably withhold any consent required under this D&O Coverage Section, provided that the **Insurer**, when it has not assumed the defense of a **Claim** pursuant to this Clause 5, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim**, and provided further that in all events the **Insurer** may withhold consent to any settlement, stipulated judgment or **Defense Costs**, or any portion thereof, to the extent such **Loss** is not covered under the terms of this D&O Coverage Section.

(*Id.* at 77.)

## II.  Standard of Review

Motions for reconsideration "shall be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked." D. Conn. L. Civ. R. 7(c)(1). The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478). This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). If "the moving party seeks solely to relitigate an issue already decided," a court should deny the motion for reconsideration and adhere to its prior decision. *Id.*

## III. Discussion

CMEEC contends that reconsideration is warranted because the Court overlooked that "CMEEC established its *prima facie* case beyond genuine dispute" that the indictments and Pryor civil action constituted claims under the Policy and erroneously concluded that CMEEC still had to demonstrate that its claims were covered under the parties' Policy at trial. (Pl.'s Mem at 2-4, 16.) It asks the Court to reconsider its denial of summary judgment on these counts, leaving only a damage calculation for trial. (*Id.* at 23-24.)

### A. Counts Two and Four

In its original motion for summary judgment, CMEEC argued that the indictments fell within the Policy Period,[3] (Mem. of Law Supporting Pl.'s Mot. for Partial Summ. J. [Doc. # 61-36] at 23), and "[b]eyond dispute, the Indictments alleged Wrongful Acts by Individual Insureds . . . who were all officers and/or directors of CMEEC . . . [and] CMEEC indemnified the Individual Insureds pursuant to CMEEC Bylaws." (*Id.* at 28.) In support, CMEEC attached the deposition of Gene Domanico, who was deposed as National Union's Rule 30(b)(6) witness. (Ex. 2, Pl.'s Mot. for Partial Summ. J. [Doc. # 61-6] at 8:4-12.) In this deposition, National Union agreed that the two indictments constituted, for the purposes of the parties' policy, a "claim" for an "actual or alleged wrongful act," and that the individuals named in the indictments all were "directors, officers, and agents of CMEEC." (*Id.* at 182:9-183:5.) National Union also acknowledged that the indictments were submitted for

---

[3] CMEEC argues that as it notified National Union of the original 2016 Subpoena within the "Policy period" and as the subsequent indictments arose from the same federal grand jury investigation, the indictments are considered within the "Policy Period." (Mem. of Law Supporting Pl.'s Mot. for Partial Summ. J. at 23.) This is not contested by National Union in its opposition to CMEEC's motion for summary judgment [Doc. # 70], in National Union's motion for summary judgment [Doc. #78-1], or in its opposition to CMEEC's motion for reconsideration [Doc. # 150].

6

coverage on November 13, 2018. (*Id.* at 183:7-10.) As such, CMEEC argued that National Union was required to advance defense costs under Coverages B of the D&O Coverage Section. (Pl.'s Mem. at 28, 36.)

National Union views CMEEC as trying to "retroactively 'plug [the] gaps' in its summary judgment motion" as "CMEEC never adequately set forth the arguments and facts required for a determination of coverage." (Def.'s Opp'n at 5.) National Union relies on its original opposition to CMEEC's motion for summary judgment, in which it "reserve[d] its rights to address CMEEC's inability to satisfy its initial burden of establishing coverage under the insuring agreements" and objected to CMEEC's statement of undisputed facts that referenced the Domanico deposition. (Def.'s Opp'n to Pl.'s Mot. for Summ. J. [Doc. # 70] at 14 n.8.) Further, National Union asserts that CMEEC did not sufficiently demonstrate that all the insuring agreement's terms were satisfied as it did not argue that its harm was a covered "Loss" by showing that the defense costs stemming from the indictments were "reasonable and necessary" or in excess of the policy's retention amount. (Def.'s Opp'n at 5-6.)

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona* Coll., 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). At the summary judgment stage, once an insured "produces evidence of a covered loss," the nonmoving insurance company defeats coverage by "raising a genuine issue of material fact regarding the scope of coverage or applicability of an exclusion."

7

*Harleysville Worcester Ins. Co. v. Paramount Concrete, Inc.*, 10 F. Supp. 3d 252, 260 (D. Conn. 2014).

CMEEC maintains that it established beyond genuine dispute, based on the Domanico deposition, that the indictments were "Claims" stemming from "Wrongful Acts" by the "Individual Insureds." (Pl.'s Mem. at 17.) CMEEC additionally contends that it demonstrated that the indictments occurred within the "Policy Period." (*Id.*) As such, CMEEC asserts that the Court should have evaluated these arguments and entered summary judgment in its favor. (*See id.*) The Court agrees. While National Union "objected" to CMEEC's statement of material facts, which referenced the Domanico deposition, its objections do not demonstrate the existence of a genuine dispute of material fact. National Union's objections and purported reservation of its rights are ineffective to preclude the entry of summary judgment in CMEEC's favor as it failed to advance its own evidence, or undermine its own admission, to rebut CMEEC's evidence that the indictments were "Claims" of "Wrongful Acts" by the "Individual Insureds." Additionally, as the indictments stem from the 2016 subpoena which was submitted within the "Policy Period," the indictments are contained in the "Policy Period."

National Union's additional arguments in its opposition are also unavailing. It first argues that CMEEC failed to establish that all of the advanced defense costs are "reasonable and necessary." (Def.'s Opp'n at 6.) It states, "the question of whether the underlying fees are reasonable and necessary is not just one of damages—it is also a threshold issue with respect to coverage." (*Id.*) But National Union's interpretation of the policy does not accord with the insurer's duty to advance defense costs. (*See* Policy at 29.) National Union also argues that a factfinder must consider whether CMEEC is precluded from recovering Defense Costs as, it asserts, CMEEC made admissions and incurred Defense Costs without National Union's consent. (Def.'s Opp'n at 8.) CMEEC, however, could not prove that the fees were consented to by the insurer where that insurer entirely denied coverage based

8

on an inapplicable exclusion. (*See* Ruling at 9.) Moreover, National Union's contention that CMEEC failed to establish that the fees it incurred after the indictments were issued against its officers and directors were in excess of the retention amount ignores that CMEEC acknowledged the retention amount in its original briefing, (*see* Mem. of Law Supporting Pl.'s Mot. for Partial Summ. J at 4 (stating that the Policy "is subject to a self-insured retention of $75,000")), and provided an affidavit from its General Counsel that CMEEC had incurred over $3 million in legal fees for the defense of the indicted individuals. (Ex. B, Pl.'s Mot. for Summ. J. [Doc. # 61-3] at 5.)

As such, CMEEC's motion for reconsideration is granted, and summary judgment will be entered for Count Two, alleging a breach of contract, and Count Four, requesting a declaratory judgment for future legal fees.[4]

### B. Counts Five and Six

CMEEC similarly contends that the Court overlooked that CMEEC met its burden to establish coverage under Insuring Agreement C for its claims relating to the Pryor civil action and the Court should have entered summary judgment in its favor for Counts Five and Six. (Pl.'s Mem. at 22.)

CMEEC asserted in its original motion for summary judgment that the Pryor civil action was within the "Policy Period," as it arose out of the 2016 Subpoena, and is a "covered 'Claim,' under Coverage Section C of the Policy, as a Claim against CMEEC for an alleged wrongful act in the form of a breach of CMEEC's obligation to indemnify Mr. Pryor and advance his costs of defense of the Indictment against him." (Mem. of Law Supporting Pl.'s Mot. for Partial Summ. at 23, 36.) In support, CMEEC references as an undisputed

---

[4] CMEEC also asserts that the Court's holding "may have been swayed" by National Union's reference to the policy's "criminal acts exclusion." (Pl.'s Mem. at 19). CMEEC acknowledges that the Court's ruling "made no mention of the criminal acts exclusion" but argues that if the Court was influenced by this provision, it was in "clear error." (*Id.*) As the criminal exclusion had no basis in the Court's decision, it is not part of the Court's reconsideration.

9

material fact, National Union's admission that Edward Pryor filed a civil action against CMEEC. (*Id.*)

This evidence establishes that the Pryor civil action was a "Claim" as it was a civil proceeding commenced by a complaint against CMEEC as the "Organization" for a "Wrongful Act," or breach of duty its duty to indemnify Pryor. Further, similar to the indictments, as the Pryor civil action follows from the 2016 subpoena which was submitted within the "Policy Period," the Pryor civil action is contained within the "Policy Period." The Court erred in failing to consider these arguments and evidence.

National Union's arguments that it reserved its rights to demonstrate that CMEEC failed to satisfy its initial burden of proving coverage, and CMEEC's purported obligation to prove that its fees were consented to and reasonable and necessary in order to establish coverage are also not compelling in the context of the Pryor civil action. In National Union's motion for summary judgment, however, it did assert that that CMEEC was not currently incurring fees for the Pryor civil action, as it is stayed, and there was "no indication as to whether the legal fees and costs for the . . . Pryor Lawsuit exceed the self-insured retention" as CMEEC only spent $30,000 to defend itself in this action. (Def.'s Mot. for Summ. J. [Doc. # 78-1] at 10 n.7.) The self-insured retention provision states that a single retention agreement applies to "Related Wrongful Acts." (Policy at 17.) While CMEEC did not directly address in its original briefing whether one self-insured retention applied, it provided the Court with a statement by National Union that the indictments and Pryor civil action constituted "Related Wrongful Acts" under the Policy. (*See* Exhibit E, Pl.'s Mot. for Summ. J. [Doc. # 70-7] at 6-7.) As such, there is no genuine dispute over whether one retention agreement applies to the Pryor civil action.

Accordingly, CMEEC's motion for reconsideration is granted as to the Pryor civil action, and summary judgment will be entered for Count Five, alleging a breach of contract, and Count Six, requesting a declaratory judgment for future legal fees

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Reconsideration [Doc. # 150] is GRANTED and summary judgment is entered in favor of CMEEC on Counts Two, Four, Five, and Six.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of October 2021